O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMON DEL RIO, | ) | NO. EDCV 09-214-TJH (MAN) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| v. | ) | COMPLAINT WITH LEAVE TO AMEND |
| | ) | |
| GOVERNOR SCHWARZENEGGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, on February 11, 2009 ("Complaint").[1]

Congress has mandated that courts perform an initial screening of prisoner civil rights actions. This Court may dismiss a prisoner civil rights action before service of process if it concludes that the complaint is frivolous, fails to state a claim, or seeks relief against a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C.

---

[1]   Plaintiff initially commenced this action in the United States District Court for the Southern District of California, which transferred it to this judicial district.

§ 1997e(c)(1).   In screening such a complaint, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt.  *See* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).   A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff is currently incarcerated at High Desert State Prison. (*See* Change of Address filed April 29, 2009.)  In this action, plaintiff sues the following officials at Ironwood State Prison ("Ironwood"): (1) Correctional Counselor Ruelas; (2) Correctional Captain E. Flamer; (3) Warden D. Ollison; (4) Chief Medical Doctor Thomas; (5) Medical Appeals Coordinator L. Bonnet; (6) Correctional Captain Anti; (7) Correctional Counselor Luna; (8) Correctional Captain Payton; (9) Correctional Counselor B. Arneson; (10) Classification Staff Representative W. Sanford; (11) Classification Staff Representative D. Arline; (12) Warden Debra Dexter; (13) Correctional Captain N. McDowell; (14) Chief Deputy Warden Michael A. Smelosky; (15) Associate Warden E.D. Angel; (16) Correctional Officer Macurio; and (17) Correctional Sergeant Miles. (Complaint at 2-6.)[2]  Plaintiff further sues the following defendants: (1) Associate Warden Crawford at Solano State Prison ("Solano"); (2) Correctional Officer Fugate at Corcoran State Prison ("Corcoran"); (3)

_____

[2]    The Court has re-numbered the pages of the Complaint consecutively for its convenience.

N. Grannis at the Inmate Appeals Branch of the California Department of Corrections and Rehabilitation in Sacramento; (4) Correctional Captain P.D. Vera, Appeals Examiner; and (5) California Governor Arnold Schwarzenegger. (*Id.* at 2, 6-7.)

Plaintiff alleges that he was paroled from federal custody to Folsom State Prison in 1982, and was later transferred to Soledad State Prison ("Soledad") on account of his disciplinary-free record. (Complaint at 8.) In 1987, Soledad officials intercepted a note indicating that plaintiff had placed a contract on a correctional officer's life. (*Id.* at 8.) Plaintiff was placed in administrative segregation, but was returned to the general population after an investigation revealed that the note was a "prank." (*Id.*) Shortly afterwards, plaintiff was charged with a Rules Violation Report ("RVR") for forcing another inmate to orally copulate him at knife-point. (*Id.*) He was found guilty and assessed a six-month disciplinary segregation term. (*Id.*) The disciplinary conviction was placed in his central file, as was information that plaintiff was a "shot caller" in the Southern Hispanics gang. (*Id.*) Plaintiff contends that, at that time, he did not have sufficient knowledge of administrative appeal procedures to challenge the RVR, or to challenge the anonymous note that resulted in the documentation in his file identifying him -- falsely, according to plaintiff -- as a Southern Hispanic "shot caller." (*Id.* at 9.)

Thirteen years later, while plaintiff was incarcerated at Solano, he was again placed in administrative segregation due to another anonymous note identifying him as a "shot caller." (Complaint at 9.) After a few months, he was returned to the general population, but later

1   was placed in administrative segregation to protect him after an inmate
2   told prison staff that he had been asked to attack plaintiff with a
3   knife. (*Id.*) Plaintiff contends that his property was not removed from
4   his cell while he was in administrative segregation, and his cell mate
5   was able to go through it and take what he wanted. (*Id.*) Plaintiff
6   filed a grievance against the correctional officer who had failed to
7   remove plaintiff's property from his cell. (*Id.* at 10.)

8

9       While the grievance was pending, two inmates assaulted the
10  correctional officer against whom plaintiff had filed the grievance, and
11  "it was alleged" that plaintiff had ordered them to do so. (Complaint
12  at 10.) Plaintiff was also questioned about a note accusing him of
13  having put out a contract on the warden's life. (*Id.*) Plaintiff felt
14  that these accusations were being placed in his central file as a
15  reprisal for filing a grievance. (*Id.* at 9, 10.)

16

17      Plaintiff complains that, because of these incidents, Associate
18  Warden Crawford caused him to be reclassified to a less favorable
19  custody rating and placed on single cell status. (Complaint at 2, 10-
20  11) Plaintiff was transferred to Corcoran, where he refused to
21  "program" and was placed in administrative segregation. (*Id.* at 11.)
22  While plaintiff was hospitalized due to heart complications,
23  Correctional Officer Fugate removed plaintiff's personal property,
24  including legal books and papers, from his cell and lost or discarded
25  it. (*Id.*) Plaintiff filed a grievance against officer Fugate. (*Id.*)

26

27      Sometime in 2002, plaintiff was transferred to Ironwood.
28  (Complaint at 12.) He was placed on single cell status, and a

1   disciplinary conviction for rape was placed in his central file.  (*Id.*)
2   Plaintiff protested that he did not have a rape conviction, but was told
3   that the documentation would remain in his file until the administrative
4   appeals  pending  in  Solano  and  Corcoran  regarding  the  matter  were
5   resolved.  (*Id.*)  Correctional Captain Flamer was the chairperson and
6   Correctional Counselor Ruelas was the recorder at this hearing, which
7   took place on September 17, 2002.  (*Id.*)  At his request, plaintiff was
8   housed in the "A" facility, which offered instruction in silk screening.
9   (*Id.*)

10

11       Plaintiff was still housed at the "A" facility three years later,
12   when he was hospitalized at the Palo Verde Hospital due to heart
13   complications.   (Complaint at 13-14.)   At the hospital, plaintiff
14   suffered two mild heart attacks, which he ascribes to an unprofessional
15   attempt by his treating physician to kill him by over-medication.  (*Id.*
16   at 14.)  Noting that several inmates had died at the hospital, plaintiff
17   requested that Warden Ollison investigate the medical care provided
18   there, but Warden Ollison never responded to plaintiff's request.  (*Id.*)
19   Chief  Medical  Doctor  Thomas  denied  plaintiff's  request  for  an
20   investigation and referred the matter to Medical Appeals Coordinator
21   Bonnet.  (*Id.*)

22

23       Defendant Bonnet sent a mental health employee to interview
24   plaintiff "so that it would appear [he] was a mental patient," and
25   plaintiff refused to be interviewed by him.  (Complaint at 13-14.)  He
26   filed administrative appeals regarding the matter, and soon afterwards
27   was  transferred  from  the  "A"  facility  to  the  less  desirable  "D"
28   facility.  (*Id.* at 14.)  Plaintiff requested that Correctional Counselor

1  Luna and Captain Anti stop the move, but they refused.  (*Id.*)

2

3      At the "D" facility, plaintiff was placed on single cell status.

4  (Complaint at 14.)  At a hearing regarding his transfer, Captain Payton

5  notified plaintiff that the reason for the transfer was the rape

6  conviction in his central file.  (*Id.*)  The inmates in the "D" facility

7  learned of the rape conviction, and plaintiff was assaulted with a

8  prison-made weapon.   (*Id.*)   As a result, he was again placed in

9  administrative segregation.  (*Id.*)

10

11      While in administrative segregation, plaintiff was scheduled to

12  appear before the Board of Prison Terms ("Board") for a parole

13  suitability hearing. (Complaint at 15.)  He filed grievances requesting

14  that a correctional counselor other than defendant Ruelas prepare the

15  Board report for the hearing, and that the Board be advised his central

16  file contained "illegal documentation." (*Id.*)  Plaintiff was obliged

17  to stipulate to a three-year parole denial in order to be able to

18  resolve these issues before his suitability hearing.  (*Id.*)  He also

19  contends that correctional counselors Arneson and Ruelas and

20  classification staff members Sanford and Arline conspired to keep him

21  in Ironwood administrative segregation for over a year in retaliation

22  for his filing of grievances.  (*Id.* at 16.)

23

24      While plaintiff was awaiting transfer from Ironwood to Pleasant

25  Valley State Prison, Correctional Officer Macurio removed some of his

26  property, including legal materials, so that plaintiff would have fewer

27  boxes to transfer.  (Complaint at 16-17.)  Plaintiff requested that

28  Macurio leave his legal materials alone, because plaintiff had a pending

1  state court appeal pertaining to a motion for DNA testing. (*Id.* at 17.)

2  Sergeant Miles refused to intervene. (*Id.*) Plaintiff complained to

3  Warden Dexter, but she responded that he should address his concerns to

4  Captain Payton, the facility captain. (*Id.* at 17-18.)

5

6      Captain McDowell, Associate Warden Angel, Chief Deputy Warden

7  Michael Smelosky, Appeal Examiner Vera, and Inmate Appeals Branch Chief

8  Grannis reviewed plaintiff's administrative appeals requesting the

9  removal of "illegal documentation" from his prison file, and denied the

10  appeals.[3] (Complaint at 18.) Plaintiff then sought relief from Governor

11  Schwarzenegger. (*Id.* at 19.) The Governor's office assigned the matter

12  to the Office of the Inspector General, which denied plaintiff's

13  request. (*Id.*)

14

15      Plaintiff seeks damages and an injunction preventing defendants

16  from "further submitting illegal documentation" into his central file.

17  (Complaint at 21.) He also requests a transfer to a federal prison.

18  (*Id.*)

19

20                              **DISCUSSION**

21

22  **I.   PLAINTIFF'S DUE PROCESS, ACCESS TO COURTS, AND EIGHTH AMENDMENT**

23      **CLAIMS MUST BE DISMISSED**.

24

25      Plaintiff asserts federal claims under the Due Process Clause, the

26

27      [3]   Plaintiff alleges that Captain McDowell "partially granted"
   the appeal at the first level, but that the "illegal documentation" was
28   not removed. (Complaint at 18.)

                                     7

Cruel and Unusual Punishment Clause of the Eighth Amendment, and the First Amendment right of access to courts. In addition, while not expressly enumerated, the Complaint also contains a retaliation claim. (Complaint at 2, 3, 4, 8-19.) The Court liberally construes the Complaint to assert the following federal claims against the following defendants: (1) due process claims against defendants Ollison, Thomas, Bonnet, Dexter, McDowell, Angel, Smelosky, Vera, and Grannis based on their handling of plaintiff's grievances; (2) due process and Eighth Amendment claims against defendants Crawford, Flamer, Ruelas, Sanford, Arline, Dexter, McDowell, Angel, Smelosky, and Schwarzenegger based on their placement of, or refusal to remove, "deceitful" matter in plaintiff's central file; (3) access to courts claims against defendants Fugate, Macurio, and Miles based on the confiscation or loss of plaintiff's legal property; (4) due process claims against defendants Anti, Luna, and Payton based on plaintiff's transfer to the "D" facility; (5) due process claims against defendants Arneson, Sanford, and Arline based on plaintiff's placement in administrative segregation; and (6) retaliation claims against defendants Anti and Payton based on plaintiff's transfer to the "D" facility and against defendant Arneson based on plaintiff's placement in segregation. (Complaint at 1-6.)

For the reasons set forth below, the Court concludes that plaintiff's retaliation claims against defendants Anti, Payton, and Arneson withstand screening, but that plaintiff's due process, access to courts, and Eighth Amendment claims must be dismissed.[4]

_____

[4]    The statute of limitations is an affirmative defense, and the Court does not, on screening, determine whether an action is time-barred. However, the Court notes that plaintiff's claims against some

**A.   Plaintiff Fails To State A Claim Based On The Processing Of His Grievances.**

Plaintiff asserts claims against defendants Ollison, Thomas, Bonnet, Dexter, McDowell, Angel, Smelosky, Vera, and Grannis based on their handling of his grievances. Plaintiff alleges that: (1) Warden Ollison never responded to, and Chief Medical Doctor Thomas denied, plaintiff's request that they investigate the allegedly deficient medical care provided to him and other inmates at the Palo Verde Hospital (Complaint at 13); (2) Medical Appeals Coordinator Bonnet mishandled plaintiff's appeal by assigning a mental health employee to interview him (*id.* at 13-14); (3) Warden Dexter responded to plaintiff's complaints about the loss of his legal property by advising him to contact the facility captain (*id.* at 17-18); and (4) Captain McDowell, Associate Warden Angel, Chief Deputy Warden Smelosky, Appeal Examiner Vera, and Inmate Appeals Branch Chief Grannis denied, or otherwise mishandled, plaintiff's administrative appeals requesting the removal of the allegedly "deceitful" documentation from his central file (*id.* at 18-19).

"[A]n inmate has no due process rights regarding the proper handling of grievances." <u>Wise v. Washington State Dep't of Corrections</u>,

_____

of the defendants arise out of events that occurred in 2002, or earlier. (*See, e.g.,* Complaint at 10, 11, 12.)  In general, the statute of limitations for Section 1983 claims in California is one year for claims arising before January 1, 2003, and two years for claims arising after that date.  California Civil Procedure Code § 335.1 (2003); California Civil Procedure Code § 340(3) (2001); *see* <u>Guerrero v. Gates</u>, 442 F.3d 697, 705 n.32 (2006).  The prisoner tolling statute tolls the statute of limitations during imprisonment for an additional two years. California Civil Procedure Code § 352.1.

244 Fed. Appx. 106, 108, (9th Cir. 2007),[5] *cert. denied*, 128 S. Ct. 1733 (2008); *see* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)("There is no legitimate claim of entitlement to a grievance procedure."). Thus, plaintiff cannot state a claim based on the mishandling or denial of his grievances.

Accordingly, plaintiff's claims against defendants Ollison, Thomas, Bonnet, Dexter, McDowell, Angel, Smelosky, Vera, and Grannis based on their handling of his grievances must be dismissed.[6]

**B.   Plaintiff Fails To State A Claim Based On The Allegedly False Or "Deceitful" Matter In His Central File.**

Plaintiff alleges violations of his due process and Eighth Amendment rights by defendants Crawford, Flamer, Ruelas, Sanford, Arline, Dexter, McDowell, Angel, Smelosky, and Schwarzenegger in connection with his central file. Specifically, plaintiff contends that defendants Crawford, Flamer, Ruelas, Sanford, and Arline placed "deceitful" or "illegal" information in his file and that defendants

---

[5]   The Court may cite unpublished Ninth Circuit decisions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

[6]   The Complaint may also be liberally construed to assert claims against defendants McDowell, Angel, and Smelosky based on their refusal to remove allegedly "deceitful" documentation from plaintiff's central file, and the Court will address these claims against them in the following section. Plaintiff's claims against defendants Ollison, Thomas, Bonnet, Dexter, Vera, and Grannis, however, arise solely from their handling of plaintiff's grievances.

McDowell, Angel, Smelosky, and Schwarzenegger have refused to remove it. (Complaint at 1-6, 10-19.)  Plaintiff complains that he is unlikely to be found suitable for parole while this information is in his file. (*Id.* at 19.)

The purportedly "deceitful" documentation pertains to a disciplinary conviction sustained by plaintiff in 1987 for forcing another inmate, at knife point, to orally copulate him.  (Complaint at 8.)  Plaintiff admits that he suffered the disciplinary conviction, and he is not challenging its validity in this action.[7]  (*Id.*)  Rather, plaintiff apparently is complaining that the disciplinary conviction was erroneously described in his prison record as "rape" rather than forcible oral copulation. (*See* Complaint at 8, 12, 18, Exh. A.)

Plaintiff has attached to the Complaint his administrative appeals pertaining to this claim.  In the first level response, dated January 24, 2008, defendants McDowell and Angel found that, on February 15, 1987, plaintiff sustained a disciplinary conviction for oral copulation by force, and this disciplinary conviction was properly included in his prison record.   (Complaint, Ex. A, First Level Response at 2.)

---

[7]     In general, the proper vehicle to invalidate a disciplinary conviction is not a Section 1983 action but a timely petition for a writ of habeas corpus.  *See* Preiser v. Rodriguez, 411 U.S. 475, 487, 93 S. Ct. 1827, 1835 (1973)(habeas corpus is available to attack future confinement and obtain an earlier release).  The Ninth Circuit has held that habeas corpus jurisdiction exists when an inmate "seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989).  "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence . . . determines the availability of habeas corpus." Ramirez, 334 F.3d at 858; *see also* Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004).

Defendants McDowell and Angel further found that plaintiff did not sustain a conviction for rape, and thus the reference to "rape" was erroneous. (*Id.*) Defendants McDowell and Angel partially granted plaintiff's grievance, stating that a corrected copy of the report would be prepared to remove the rape charge. (*Id.* at 4.)

A procedural error cannot give rise to a due process violation when such an error was later corrected through the administrative appeal process. *See* <u>Morissette v. Peters</u>, 45 F.3d 1119, 1122 (7th Cir. 1995)("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process. The administrative review process is part of the due process afforded prisoners.")(*internal citation omitted*); <u>Torricellas v. Poole</u>, 954 F. Supp. 1405 (C.D. Cal. 1997)("Where a procedural error has been corrected in the administrative process . . . there has been no compensable due process violation."). If, as a result of plaintiff's administrative appeals, his prison record has been corrected to remove the reference to a rape conviction, he cannot assert a due process claim.

Plaintiff alleges that the "deceitful" documentation was *not* removed. (Complaint at 18.) However, it is unclear whether plaintiff is alleging that the erroneous reference to a "rape" conviction was not removed, as the first level response to his grievance represented would occur, or whether he is dissatisfied because he expected removal of any reference to his February 15, 1987 disciplinary conviction, however characterized. As noted above, plaintiff does not dispute that he sustained a disciplinary conviction for oral copulation by force, and he has not alleged any grounds for its removal from his prison record.

1    Plaintiff may also be challenging the presence in his central file

2   of information that he was accused of being a "shot caller" in the

3   Southern Hispanics gang and of soliciting staff assaults. (Complaint

4   at 8-9.)  However, it is far from clear whether plaintiff is, in fact,

5   alleging that these accusations are currently documented in his prison

6   file, and, if so, whether he is challenging them through this action.

7   If plaintiff continues to assert this claim in his amended complaint,

8   he should clearly identify the allegedly "deceitful" documentation in

9   his central file that he is challenging through this action.

10

11    Whatever the exact nature of the "deceitful" documentation in

12   issue, plaintiff has not alleged an interest protected by the Due

13   Process Clause.   The requirements of due process apply only to the

14   deprivation of interests encompassed by the Fourteenth Amendment's

15   protection of liberty and property.  Board of Regents v. Roth, 408 U.S.

16   564, 569, 92 S. Ct. 2701, 2705 (1972).  A protectible liberty interest

17   may be created by the Due Process Clause of its own force or by states

18   through statutes or regulations.    Sandin v. Connor, 515 U.S. 472,

19   483-84, 115 S. Ct. 2293, 2300 (1995).  State statutes or regulations

20   give rise to a liberty interest implicating the Due Process Clause only

21   when a change occurs in the prisoner's confinement that imposes an

22   "atypical and significant hardship on the inmate in relation to the

23   ordinary incidents of prison life."  Id. at 484, 115 S. Ct. at 2300.

24

25    The inaccuracy of records compiled or maintained by the state is

26   not, standing alone, sufficient to state a claim of constitutional

27   injury under the Due Process Clause.  See Paul v. Davis, 424 U.S. 693,

28   711-14, 96 S. Ct. 1155, 1165-66 (1976)(plaintiff could not challenge

dissemination of information about his shoplifting arrest in a Section 1983 action, because there is no protectible interest in reputation); Velasquez v. Woods, 329 F.3d 420, 421-22 (5th Cir. 2003)(no constitutional right to expunge false information from prison file); *but see* Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979)(in a pre-Sandin decision, holding that an inmate may raise a constitutional claim if he alleges that there is false information in his file which was relied on to a constitutionally significant degree).

Nor has plaintiff alleged that the inclusion of allegedly "deceitful" information in his central file is "the type of atypical, significant deprivation" that "might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S. Ct. at 2301. In Sandin, the Supreme Court held that a misconduct charge in the plaintiff's disciplinary record did not "inevitably affect the duration of his sentence" because the parole board was not required to deny parole in the face of a misconduct record or to grant parole in its absence, and the procedural protections afforded a prisoner by state law enabled him to explain the circumstances behind the misconduct record at his parole hearing. *Id.* at 487, 115 S. Ct. at 2302. Thus, after Sandin, an inmate seeking to expunge erroneous information from his file under the Due Process Clause "must show that the false information will inevitably lengthen the duration of the inmate's incarceration." Edwards v. Marshall, 2006 WL 2065400, *1 (E.D. Cal., Jul. 24, 2006)(denying expungement claim raised in habeas action).

Plaintiff has not made the requisite showing. The allegedly "deceitful" documentation in his file is not of the type that would

1    "inevitably" lead to the denial of parole.  *See* <u>Sandin</u>, 515 U.S. at 487,

2    115 S. Ct. at 2302. While post-incarceration misconduct is relevant to

3    an inmate's suitability for parole, it is only one of the factors the

4    parole board must consider.  Cal. Code Regs. tit. 15, § 2402.  Moreover,

5    plaintiff will have the opportunity to explain the precise nature of his

6    disciplinary conviction at his parole suitability hearing.  The

7    likelihood that he will be found unsuitable for parole because his

8    disciplinary conviction for oral copulation by force was

9    mischaracterized on some documents as rape, or because of anonymous

10   accusations which did not result in any disciplinary charges, is "simply

11   too attenuated to invoke the procedural guarantees of the Due Process

12   Clause."  <u>Sandin</u>, 515 U.S. at 487, 115 S. Ct. at 2302.

13

14       Accordingly, plaintiff's due process claim based on the allegedly

15   false or "deceitful" information in his prison file must be dismissed.

16

17       **C.   <u>Plaintiff Fails To State An Access To Courts Claim</u>**.

18

19       Plaintiff asserts access to courts claims against defendants

20   Fugate, Macurio, and Miles based on the confiscation and/or loss of his

21   legal property.  (Complaint at 2, 11-12, 16-17.)

22

23       Prisoners have a constitutional right of access to courts to

24   challenge their convictions and their conditions of confinement.  *See*

25   <u>Lewis v. Casey</u>, 518 U.S. 343, 346, 355, 116 S. Ct. 2174, 2177, 2182

26   (1996).  Claims for denial of access to courts may arise from the

27   frustration or hindrance of "a litigating opportunity yet to be gained"

28   (a forward-looking access claim), or from loss of a meritorious claim

that cannot now be tried (a backward-looking claim).   Christopher v.
Harbury, 536 U.S. 403, 412-15, 122 S. Ct. 2179, 2185-87 (2002).   To
establish a violation of a backward-looking access claim, such as that
at issue here, plaintiff must demonstrate that the defendant's conduct
caused him to suffer an actual injury.   Lewis, 518 U.S. at 351, 116 S.
Ct. at 2180.   In order to establish actual injury, the inmate must
demonstrate that defendants' acts or omissions "hindered his efforts
to pursue a [nonfrivolous] legal claim." *Id.*   "[T]he underlying cause
of action and its lost remedy must be addressed by allegations in the
complaint sufficient to give fair notice to a defendant," and plaintiff
must describe the underlying claim "well enough to apply the
'nonfrivolous' test and to show that the 'arguable' nature of the
underlying claim is more than hope." Christopher, 536 U.S. at 416, 122
S. Ct. at 218.

Here, plaintiff's access to courts claims arise out of two
incidents.   First, plaintiff alleges that while he was housed in
administrative segregation at Corcoran, Correctional Officer Fugate lost
or discarded plaintiff's personal property, including legal documents
and books. (Complaint at 2, 11.)   Second, plaintiff alleges that while
he was at Ironwood awaiting transfer to Pleasant Valley State Prison,
Correctional Officer Macurio told plaintiff that he had too many boxes
and started removing some of his property. (Complaint at 16-17.)   The
property removed by defendant Macurio included legal materials
pertaining to plaintiff's then-pending state court appeal regarding his
motion for DNA testing.  (*Id.* at 17.)

Plaintiff has not alleged actual injury with respect to either

incident.  As regards the first incident, plaintiff does not allege that defendant Fugate's loss of his legal papers and books impaired any pending or contemplated litigation.  (*See* Complaint at 11.)  Indeed, plaintiff does not describe any adverse consequences resulting from the loss of the legal papers.  *See* <u>Lewis</u>, 518 U.S. at 351, 116 S. Ct. at 2180.

As regards the second incident, plaintiff contends that defendant Macurio removed legal papers pertaining to plaintiff's state court appeal regarding his motion for DNA testing.  (Complaint at 17.) Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the California Court of Appeal's unpublished decision in <u>Del Rio v. Superior Court</u>, 2005 WL 3114169 (Nov. 22, 2005)(No. DO47191).  According to that decision, the California Court of Appeal *granted* plaintiff's petition for a writ of mandate from the Superior Court's denial of his motion for DNA testing.  *Id*. at *2.  The California Court of Appeal directed the Superior Court to vacate its denial of plaintiff's motion for DNA testing, and to determine whether plaintiff was entitled to the appointment of counsel to assist him in preparing and presenting the motion.  *Id.*  Because plaintiff prevailed in the proceedings that were allegedly hindered by defendant Macurio's acts, the loss of the documents did not cause him any prejudice.  *See* <u>Lewis</u>, 518 U.S. at 351, 116 S. Ct. at 2180.

Accordingly, plaintiff's access to courts claim must be dismissed.

///

///

///

**D.**   **Plaintiff Fails To State A Due Process Claim Based On His Transfer**.

Plaintiff contends that defendants Anti, Luna, and Payton "illegally" transferred him to a less desirable Ironwood facility, in violation of his due process rights.   (Complaint at 2-3, 14.)

A prisoner has no liberty interest in where he is housed.   <u>McKune v. Lile</u>, 536 U.S. 24, 39, 122 S. Ct. 2017, 2027 (2002)(noting that "the decision where to house inmates is at the core of prison administrators' expertise" and that inmates have no protectible interest in remaining at a particular facility); <u>Meachum v. Fano</u>, 427 U.S. 215, 225, 96 S. Ct. 2532, 2537 (1976)(holding that transfer to a higher security prison does not implicate a liberty interest); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995)("prisoners generally have no constitutionally protected liberty interest in being held at, or remaining at, a given facility"). Plaintiff, therefore cannot assert a due process claim against defendants Anti, Luna, and Payton based on his transfer to the "D" facility.

Accordingly, plaintiff's due process claims against defendants Anti, Luna, and Payton must be dismissed.

**E.**   **Plaintiff Fails To State A Claim Based On His Placement In Segregation**.

Plaintiff asserts a due process claim against defendants Arneson, Sanford, and Arline based on his placement in administrative

1  segregation.  (Complaint at 3-4, 16.)

2

3      In general, a prisoner has no liberty interest in avoiding transfer

4  to more restrictive conditions of confinement, such as a transfer from

5  the general population to segregation, unless he can show an atypical

6  and significant hardship in relation to the ordinary incidents of prison

7  life.  Wilkinson v. Austin, 545 U.S. 209, 221-23, 125 S. Ct. 2384, 2393-

8  94 (2005); Sandin, 515 U.S. at 484, 115 S. Ct. at 2300.  "Typically,

9  administrative segregation in and of itself does not implicate a

10  protected liberty interest."  Serrano v. Francis, 345 F.3d 1071, 1078

11  (9th Cir. 2003); May v. Baldwin, 109 F.3d 557, 565 (9th Cir.

12  1997)(administrative segregation falls within the terms of confinement

13  ordinarily contemplated by a sentence).  Administrative segregation may

14  implicate due process if the confinement imposes an atypical and

15  significant hardship.  See, e.g., Wilkinson, 545 U.S. at 223-24, 125 S.

16  Ct. at 2394-95 (inmates' liberty interests were implicated by their

17  indefinite confinement in highly restrictive "supermax" prison, where

18  the inmates were deprived of almost all human contact and were

19  disqualified from parole consideration); Serrano, 345 F.3d at 1078-79

20  (placing disabled inmate, without his wheelchair, in segregation unit

21  not equipped for disabled persons gave rise to a liberty interest);

22  Ramirez, 334 F.3d at 861 (directing district court to consider two-year

23  duration of administrative segregation in determining whether placement

24  imposed atypical and significant burden).

25

26      Here, plaintiff alleges that he was confined in the Ironwood

27  administrative segregation for "over a year."  (Complaint at 16.)

28  However, the Complaint contains no allegations regarding the conditions

of confinement in the segregation unit.  Plaintiff, therefore, has not alleged that his confinement in the Ironwood administrative segregation imposed a significant and atypical burden, and has not alleged a liberty interest implicating the protections of the Due Process Clause.  *See* Sandin, 515 U.S. at 484, 115 S. Ct. at 2300.

Accordingly, plaintiff's due process claim based on his placement in administrative segregation must be dismissed.

**F.   Plaintiff Fails To State A Claim Against Governor Schwarzenegger**.

One of the defendants sued by plaintiff is Governor Schwarzenegger. Plaintiff alleges that the Governor "was informed of the illegal altered documents by state of correction [sic] employees and failed to address these matters."  (Complaint at 7.)  Plaintiff further alleges that he wrote a letter to the Governor's Office, which assigned the Office of the Inspector General to investigate the matter.  (*Id.* at 19.)

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  As defined by the courts, a person "subjects" another to the deprivation of a constitutional right within the meaning of Section 1983 if he or she does an affirmative act, participates in another's affirmative act, or omits to perform an act he or she is legally required to do that causes the complained-of

deprivation. *See, e.g.,* <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).


Thus, "[l]iability under Section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under Section 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989)(*internal citations omitted*). Supervisors can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others. <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000). However, there must be sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446-47 (9th Cir. 1991). Especially when a plaintiff seeks to hold a supervisor liable for damages, the inquiry into causation must be individualized and must focus on the duties and responsibilities of each individual defendant. <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).


Plaintiff has not alleged any facts that could be construed to support a constitutional claim against Governor Schwarzenegger. Plaintiff merely alleges that he complained about false or inaccurate information in his prison file to the Governor's Office, which requested a state agency to investigate the matter. There is nothing to indicate

1   any personal involvement by Governor Schwarzenegger.   Moreover, the

2   duties and responsibilities of the Governor of California do not include

3   rectifying false or inaccurate statements in inmate records; these are

4   not acts which he is "legally required to do."   *See* Leer, 844 F.2d at

5   633.    Plaintiff's  allegations  amount  to  nothing  more  than  an

6   impermissible attempt to hold Governor Schwarzenegger liable under a

7   *respondeat superior* theory.

8

9       According, plaintiff's claim against Governor Schwarzenegger must

10  be dismissed.

11

12      **G.   Plaintiff Must Clarify The Basis For His Eighth Amendment**

13          **Claims**.

14

15      Plaintiff purports to assert a claim under the Cruel and Unusual

16  Punishment Clause of the Eighth Amendment.   (Complaint at 8-19.)

17  However, the Court cannot determine from the Complaint under what theory

18  plaintiff is asserting an Eighth Amendment claim and against whom he is

19  asserting it.   Rule 8(a)(2) of the Federal Rules of Civil Procedure

20  requires that a complaint include a short and plain statement of the

21  claim showing that the pleader is entitled to relief, in order to give

22  the defendant fair notice of what the claim is and the ground upon which

23  it rests.  *See* Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555,

24  127 S. Ct. 1955, 1964 (2007); *see also* Balistreri v. Pacifica Police

25  Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (complaint may be dismissed for

26  lack of a cognizable legal theory or insufficient facts to support a

27  cognizable legal theory).   The Complaint does not give fair notice of

28  what plaintiff's Eighth Amendment claims are, or of the grounds upon

1   which they rest.  Accordingly, Rule 8(a) mandates their dismissal.

2

3   **II.   PLAINTIFF MUST INCLUDE ALL DEFENDANTS IN THE CAPTION**.

4

5        Rule 10(a) of the Federal Rules of Civil Procedure requires the

6   name of each defendant to be included in the caption of the complaint.

7   *See also* <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262-63 (9th Cir. 1992);

8   Local Rule 11-3.8(d).  If plaintiff files an amended complaint, he must

9   include in the caption the names of all the defendants against whom he

10  is asserting a claim.

11

12                              CONCLUSION

13

14       For the foregoing reasons, the Complaint is dismissed with leave

15  to amend.  If plaintiff wishes to pursue this action, he is granted

16  thirty (30) days from the date of this Memorandum and Order within which

17  to file a First Amended Complaint that attempts to cure the defects in

18  the First Amended Complaint described herein.  The First Amended

19  Complaint, if any, shall be complete in itself.  It shall not refer in

20  any manner to the original Complaint.

21

22       **Plaintiff is explicitly cautioned that failure to timely file a**

23  **First Amended Complaint, or failure to correct the deficiencies**

24  **described herein, may result in a recommendation that this action be**

25  **dismissed pursuant to Fed. R. Civ. P. 41(b).**

26  DATED: June 10, 2009

27                              _____/s/_____
                                    MARGARET A. NAGLE
28                              UNITED STATES MAGISTRATE JUDGE

                                      23